<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RENEE WOLF**, <br><br> Plaintiff, <br><br> v. <br><br> **PROGRESSIVE PAIN MANAGEMENT, LLC**, *et al.*, <br><br> Defendants. | Civil Action No. 23-1866 (ZNQ) (JBD) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendants Progressive Pain Management, LLC ("Progressive" or the "Practice"), Brian Bannister, M.D. ("Dr. Bannister"), and Penelope Bannister ("Mrs. Bannister") (collectively, "Defendants"). ("Motion", ECF No. 28.) In support of the Motion, Defendants filed a brief ("Moving Br.", ECF No. 28) and a Statement of Undisputed Material Facts ("SUMF", ECF No. 28-14). Plaintiff Renee Wolf ("Plaintiff") opposes the Motion and filed an opposition brief ("Opp'n Br.", ECF No. 30) and a Counterstatement of Material Facts in Response to Defendants' SUMF ("CSMF", ECF No. 32). Defendants filed a reply brief ("Reply Br.", ECF No. 34) and a Response to Plaintiff's CSMF ("RSMF", ECF No. 34.1).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion.

1

I.    **BACKGROUND AND PROCEDURAL HISTORY**

    A.    **PROCEDURAL BACKGROUND**

This action began when Plaintiff filed a Charge of Discrimination and Retaliation with the New Jersey Division on Civil Rights ("DCR") and the United States Equal Employment Opportunity Commission ("EEOC"). (*See* Complaint, "Compl.", ECF No. 1.) On March 15, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. (Compl. ¶ 13.) On April 3, 2023, Plaintiff initiated the present action in this Court by filing a two-count Complaint, asserting a disability discrimination and retaliation claim under the Americans with Disabilities Act ("ADA") against Defendant Progressive ("Count One") and a disability discrimination and retaliation claim under the New Jersey Law Against Discrimination ("NJLAD") against all Defendants ("Count Two"). (*Id.* ¶¶ 43–58.)

Following discovery, Defendants moved for summary judgment on both counts of the Complaint. (*See generally* Motion.) Importantly, Plaintiff concedes in her briefing on this motion that she does not assert a claim for disability discrimination. (Opp'n Br. at 14 n.4.) Plaintiff therefore clarifies that her ADA and NJLAD claims set forth in Counts One and Two are based on a retaliation theory. (*Id.*) Accordingly, the Court now construes the Complaint as setting forth retaliation claims only.

    B.    **FACTUAL BACKGROUND**

        1.    <u>Plaintiff Begins Working at the Practice in 2016</u>

Plaintiff began her employment with the Practice as a physician assistant in 2016. (SUMF ¶ 1; CSMF ¶ 1.) As a physician assistant, Plaintiff worked under the supervision of Dr. Bannister, the owner of the Practice. (SUMF ¶ 3; CSMF ¶ 3.) In addition to Plaintiff and Dr. Bannister, the Practice employed about eight to ten other employees. (SUMF ¶ 7; CSMF ¶ 7.) One of these

employees is Mrs. Bannister, the Practice office manager and Dr. Bannister's mother.  (SUMF ¶¶ 4, 5; CSMF ¶¶ 4, 5.)

When she began working at the Practice, Plaintiff received a copy of the Employee Handbook, which set forth the Practice's policies and procedures.  (SUMF ¶¶ 10–11; CSMF ¶¶ 10–11.)  Plaintiff also received the October 2019 version of the Employee Handbook.  (SUMF ¶ 12; CSMF ¶ 12.)  In particular, the Employee Handbook explains that the Practice prohibits employment and disability discrimination and retaliation.  (SUMF ¶ 11; CSMF ¶ 11.)  The Employee Handbook also contains a provision on "Job Abandonment" which sets forth the Practice's policy that it will consider an employee's failure to report to work for three consecutive days as the employee having abandoned their job.  (CSMF ¶ 90; RSMF ¶ 90.)  Additionally, the Practice provided discretionary bonuses to its employees.  (SUMF ¶ 9; CSMF ¶ 9.)  Plaintiff received a bonus each year she worked at the Practice, except for the 2020 work year.  (CSMF ¶ 46; RSMF ¶ 46.)

        2.    <u>Plaintiff Temporarily Stops Working at the Practice from December 2020 until April 2021</u>

The events leading up to the present action began in November 2020.  On November 24 and 25, Plaintiff took paid time off ("PTO") and traveled to North Carolina to visit her parents.  (SUMF ¶ 15; CSMF ¶ 15.)  While Plaintiff was in North Carolina, her father's health worsened, and she stayed in North Carolina to be with her family.  (CMSF ¶ 54; RSMF ¶ 54.)  On November 25, Plaintiff informed Dr. Bannister about her father's health and she asked Dr. Bannister about her available benefits under the Family and Medical Leave Act ("FMLA").  (CSMF ¶ 55; RSMF ¶ 55.)  Dr. Bannister responded that he has "no clue" about FMLA benefits and told Plaintiff that he would ask Mrs. Bannister about FMLA benefits.  (CSMF ¶ 55; RSMF ¶ 55.)  On November 28, Plaintiff again asked Dr. Bannister about FMLA leave and he instructed Plaintiff to get in contact

with Mrs. Bannister. (CSMF ¶ 56; RSMF ¶ 56.) Plaintiff asked Mrs. Bannister about FMLA leave and Mrs. Bannister informed Plaintiff that FMLA leave was not available to her because the Practice did not provide any FMLA benefits given its smaller size. (SUMF ¶ 17; CSMF ¶ 17.) Mrs. Bannister did inform Plaintiff about an alternative leave option, New Jersey Family Leave ("NJFL"). (CSMF ¶ 57; RSMF ¶ 57.)

Unfortunately, on December 5, Plaintiff's father passed away. (SUMF ¶ 19; CSMF ¶ 19.) That same day, Plaintiff told Dr. Bannister that she was in the process of applying for NJFL.[1] (CSMF ¶ 58; RSMF ¶ 58.) Between December 1 through December 18, Plaintiff used her PTO, sick days, and bereavement leave to cover her days off work. (SUMF ¶¶ 18, 20–21; CSMF ¶¶ 18, 20–21.) From December 21, 2020, and until Plaintiff returned to the Practice on April 6, 2021, Plaintiff remained on unpaid leave.[2] (SUMF ¶ 22; CSMF ¶ 22.)

During this time, Plaintiff and Defendants remained in contact. For example, on December 21, 2020, Mrs. Bannister emailed Plaintiff that she was expected to return to the Practice on January 5, 2021, and Mrs. Bannister also inquired about any applications for leave Plaintiff filed with a state or federal agency. (CSMF ¶ 59; RSMF ¶ 59.) Plaintiff also talked to Dr. Bannister about her mental health. On December 28, 2020, Plaintiff told Dr. Bannister that she was "very depressed." (SUMF ¶ 25; CSMF ¶ 25.) As it relates to Plaintiff's mental health, her primary care physician referred her to a psychologist, Dr. Marcantuono. (CSMF ¶ 61; RSMF ¶ 61.)

---

[1] The record is unclear regarding Plaintiff's efforts to apply for leave under NJFL. Plaintiff states that she applied for NJFL benefits on December 20, 2020, while Defendants state that Plaintiff applied for NJFL benefits on January 4, 2021. (SUMF ¶¶ 26–27; CSMF ¶¶ 26–27.) At some point, Plaintiff's request for NJFL leave was approved but the parties dispute when this occurred.

[2] The Court notes that Plaintiff inconsistently refers to her time off between December 21, 2020 and April 6, 2021. First, Plaintiff clearly admits that she "was [on] unpaid leave from December 21, 2020 through April 5, 2021." (CSMF ¶ 22.) Then, in the same document, Plaintiff states that she "was still upset about not receiving a bonus for 2020 when she was out on medical leave." (CSMF ¶ 79.) Plaintiff also interchangeably uses the term "leave of absence" and "medical leave" throughout her Opposition. (*See generally* Opp'n Br.) Defendants dispute that Plaintiff was ever on "medical leave." (RSMF ¶ 79.)

4

Dr. Marcantuono diagnosed Plaintiff with anxiety, depression, and panic disorder. (CSMF ¶ 61; RSMF ¶ 61.)

### 3. Plaintiff's Termination from the Practice in April 2021

On March 6, 2021, Plaintiff reached out to Dr. Bannister and confirmed that she would return to the Practice on April 6, 2021. (CSMF ¶ 66; RSMF ¶ 66.) Though Defendants dispute this point, Plaintiff states that in March 2021, she still suffered symptoms of anxiety, depression, and panic disorder but that she needed to return to work for financial reasons. (CSMF ¶ 65; RSMF ¶ 65.) Dr. Marcantuono cleared her to return to work on April 6. (SUMF ¶ 31; CSMF ¶ 31.)

Plaintiff ultimately reported for work on April 6, 2021. (SUMF ¶ 33; CSMF ¶ 33.) On her first day back, Plaintiff asked Dr. Bannister about her 2020 bonus. (SUMF ¶ 33; CSMF ¶ 33.) Dr. Bannister told Plaintiff to speak with Mrs. Bannister about Plaintiff's bonus. (CSMF ¶ 70; RSMF ¶ 70.) The parties agree that Plaintiff and Mrs. Bannister spoke on both April 6 and on April 7 about Plaintiff's bonus. (SUMF ¶ 3; CSMF ¶¶ 33, 72; RSMF ¶ 72.) However, the parties disagree about when exactly Mrs. Bannister told Plaintiff that she would not be getting a bonus for 2020 because Dr. Bannister decided that only hourly employees would receive a bonus for 2020. (SUMF ¶ 33; CSMF ¶¶ 33, 72–74; RSMF ¶¶ 72–74.) As salaried employees, neither Plaintiff nor Dr. Bannister received a bonus. (SUMF ¶ 34; CSMF ¶ 34.) Dr. Bannister explained that he could not give all employees a bonus because of the impact the COVID-19 pandemic had on the Practice. (SUMF ¶ 33; CSMF ¶ 33.) Plaintiff believes that she deserved a bonus for 2020 for several reasons, including that she worked through most of 2020 given she did not start her leave until January 2021, and that she worked through the pandemic while some hourly employees were furloughed. (SUMF ¶¶ 35–36; CSMF ¶¶ 35–36, 76–77; RSMF ¶¶ 76–77.) The parties dispute whether Plaintiff communicated to Mrs. Bannister that "she believed that she was denied a bonus for 2020 because she was out on leave." (CSMF ¶ 93; RSMF ¶ 93.)

The next day, on April 8, 2021, Plaintiff returned to work at the Practice. (CSMF ¶ 79; RSMF ¶ 79.) Though Plaintiff was physically in the Practice on April 8, all the patients she saw that day were virtual, telemedicine visits. (CSMF ¶ 80; RSMF ¶ 80.) After Plaintiff completed her assigned telemedicine visits, she told the front desk, not Dr. Bannister, that she was leaving; she then left for the day. (CSMF ¶ 82; RSMF ¶ 82.) Plaintiff left at 3:30pm even though the Practice's hours are 9:00am to 5:00pm. (CSMF ¶ 89; RSMF ¶ 89.) Mrs. Bannister called Plaintiff after she left, and Plaintiff explained that she left because she saw all her patients and she believed that she could leave when she completed her work. (CSMF ¶¶ 83–84; RSMF ¶¶ 83–84.) Mrs. Bannister told Dr. Bannister about her telephone conversation with Plaintiff, but Dr. Bannister did not speak to Plaintiff that day. (CSMF ¶¶ 85–86; RSMF ¶¶ 85–86.) Rather, Dr. Bannister instructed Mrs. Bannister to email Plaintiff "notifying her that the Practice had terminated her employment." (CSMF ¶¶ 87–88; RSMF ¶¶ 87–88.) In the email, Mrs. Bannister informed Plaintiff that she had "abandoned [her] employment position when [she] decided to leave the office at 3:30pm today without asking permission or notifying Dr. Bannister." (CSMF ¶ 89; RSMF ¶ 89.) Though the parties dispute (1) how many patients were still on the schedule and (2) whether the remaining patients were scheduled to be seen by Dr. Bannister only, the parties agree that there were at least *some* patients remaining on the schedule to be seen when Plaintiff left at 3:30pm on April 8, 2021. (SUMF ¶¶ 38–40; CSMF ¶¶ 38–40, 95; RSMF ¶¶ 95.)

Lastly, prior to Plaintiff's termination at the Practice, though she never filed a written complaint about the Practice's failure to provide Plaintiff a bonus for 2020, Plaintiff verbally expressed her concerns about not receiving the bonus to Mrs. Bannister. (SUMF ¶¶ 42–43; CSMF ¶¶ 42–43.)

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986), and it is material "if, under the substantive law, it would affect the outcome of the suit." *United Therapeutics Corp. v. Sandoz, Inc.*, Civ. Nos. 12–CV–1617, 13–CV–316, 2014 WL 1405044, at *1 (D.N.J. Apr. 10, 2014) (citing *Anderson*, 477 U.S. at 248). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id*. at 255.

A movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." ***Celotex***, 477 U.S. at 322. Once the moving party has made this showing, the burden then shifts to the party opposing summary judgment to proffer " 'specific facts showing there is a genuine issue for trial.' " *Id*. (citation omitted); see also Fed. R. Civ. P. 56(c)(1) (providing that a party alleging

7

a fact is genuinely disputed "must support the assertion by . . . citing to particular parts of materials in the record").

## III. DISCUSSION

Plaintiff's retaliation claims under the ADA and NJLAD are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021). *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003). "To establish a claim for retaliation, a plaintiff must show, '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018) (citation omitted). "If the plaintiff is able to establish these elements of [her] prima facie case, 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.'" *Shellenberger*, 318 F.3d at 187 (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). "If the employer satisfies that burden, the plaintiff must then prove that 'retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.'" *Id.* (citing *Krouse*, 126 F.3d at 501).

The Court begins by determining whether Plaintiff has established a prima facie case of retaliation. As it relates to the first element of a retaliation claim, Plaintiff must demonstrate that she engaged in an ADA protected activity. Plaintiff argues that she engaged in two protected activities: (1) when she requested a leave of absence in December 2020 (Opp'n Br. at 15–17), and (2) when she complained about not receiving a bonus for 2020 upon her return to the Practice in April 2021 (*id.* at 17–21). The Court will address each argument in turn.

8

### A. PLAINTIFF'S REQUEST FOR A LEAVE OF ABSENCE

The Third Circuit has clarified that '[t]he right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'" *Shellenberger*, 318 F.3d at 191. Accordingly, an employer may not retaliate against a plaintiff who makes a request for an accommodation motivated by a "good faith belief that he/she needs an accommodation." *Id.*

Here, it is undisputed that Plaintiff requested FMLA leave but did not receive it because the Practice does not provide FMLA benefits. As such, Plaintiff does not rely on her request for FMLA leave as the basis for her retaliation claim and instead relies on her leave of absence from December 21, 2020 through April 5, 2021. However, Plaintiff's reliance on this leave of absence as the basis for her retaliation claim is misplaced for several reasons.

First, the record does not show that Plaintiff actually requested a leave of absence from the Practice. *See Estate of Fajge v. Dick Greenfield Dodge, Inc.*, Civ. No. 11-4527, 2012 WL 2339723, at *8–9 (D.N.J. June 18, 2012); *Payne v. Woods Servs.*, Inc., 520 F. Supp. 3d 670, 680 (E.D. Pa. 2021). Rather, the record reflects several requests Plaintiff made to use her PTO, sick days, and bereavement leave to take time off in December—all of which were approved. (SUMF ¶¶ 18, 20–21; CSMF ¶¶ 18, 20–21.) There is just one document that references Plaintiff's communications with the Practice regarding absence from work: an email Mrs. Bannister sent Plaintiff on December 21, 2020, which states that Plaintiff's "expected return to work date is January 5, 2021 unless [Plaintiff is] approved for disability." (*See* Aff. of Renee Wolf ("Wolf Aff."), Ex. F, ECF No. 33-6.) After this December 2020 communication, the next communication relating to Plaintiff's leave of absence is a text from Plaintiff to Dr. Bannister where Plaintiff

9

informs Dr. Bannister that she will be returning to work on April 6, 2021. (Wolf Aff., Ex. C, ECF No. 33-3 at 31.) Notably, Plaintiff has presented no evidence that she, either formally or informally, requested a leave of absence from the Practice. *See Kaniuka v. Good Shepard Home*, Civ. No. 05-02917, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995)) ("Informal charges or complaints of discrimination, as well as informal requests for accommodation, are sufficient to constitute protected activities for establishing a prima facie case of retaliation."). The Court agrees that Plaintiff did not work at the Practice from December 21, 2020 through April 5, 2021. However, Plaintiff has not demonstrated that she requested a leave of absence from the Practice outside of inquiring about FMLA and NJFL benefits. Accordingly, the Court finds that Plaintiff has not met the first element required to establish a *prima facie* case for retaliation based on her request for a leave of absence.

### B. PLAINTIFF'S COMPLAINT ABOUT NOT RECEIVING A BONUS

Next, Plaintiff argues that Defendants terminated Plaintiff after she complained to Mrs. Bannister about not receiving a bonus for 2020. (Opp'n Br. at 17–21.) Plaintiff claims that she engaged in an ADA protected activity by "making complaints to management." (Opp'n Br. at 17–18 (quoting *Minion v. Keystone Amerihealth Caritas*, Civ. No. 16-5454, 2020 WL 3056286 (D.N.J. June 8, 2020)).) Defendants argue that Plaintiff's complaint that she did not receive a bonus for 2020 is "nothing more than a generalized complaint of workplace unfairness insufficient to support a plausible inference that [Plaintiff] opposed conduct that violates the ADA." (Reply Br. at 5.)[3] Here, Plaintiff has not demonstrated that she was on protected leave in December 2020. In fact, the only citation to the record that Plaintiff cites to, at best, states that Plaintiff was merely "out on

---

[3] Each page of Defendants' Reply Brief is incorrectly paginated as page number 10. For clarity, when the Court cites to the Reply Brief, it refers to the page numbers stamped by the Court's e-filing system.

leave." (CSMF ¶ 93.) As such, it is unclear how Plaintiff was engaging in a protected activity—that is, complaining about not receiving a bonus for the 2020 work year because she was on medical leave in late December 2020—when Plaintiff has not demonstrated that she was out on a protected leave during that time. The Court finds that Plaintiff "fails to demonstrate that she related her complaints to [disability discrimination] such that the complaints could have qualified as protected activity" under the ADA. *Daniels*, 776 F.3d at 195. The Court further finds that Plaintiff has also not met the first element required to establish a prima facie case for a retaliation claim stemming from her complaint about not receiving a bonus. The Court does not reach the issue of whether—had Plaintiff provided evidence of a protected leave—she engaged in a protected activity when she complained about not receiving a bonus as a result of taking protected leave, *i.e.*, whether her complaint regarding a bonus constitutes more than an ordinary workplace grievance.

Accordingly, Defendants are also entitled to summary judgment on Plaintiff's retaliation claims asserted in both Counts One and Two.

### IV.   CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion for Summary Judgment (ECF No. 28) and enter judgment in favor of Defendants and against Plaintiff. An appropriate Order will follow.

Date: **September 27, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
